| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL[1] | | |
|---|---|---|
| JORGE RODRÍGUEZ MELANI, CARLOS FABIÁN ARCAZ; JULIA VEGA PÉREZ; SELECT DEVELOPMENT AND MANAGEMENT CORP; HOME PHARMACYS, LLC; NORMA AGOSTO FLORES Y NICHOLAS PALOMBA<br><br>Parte Apelante<br><br>v.<br><br>CONSEJO DE TITULARES DE RIO MARVILLAGE; JUNTA DE DIRECTORES RIO MAR VILLAGE; RIO MAR COMMUNITY ASSOCIATION, INC. Y CORPORACIÓN ABC<br><br>Parte Apelada | TA2026AP00213 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Civil núm.: FA2025CV00846<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 18 de mayo de 2026.

Comparece la parte apelante, integrada por Jorge Rodríguez Melani, Carlos Fabián Arcaz; Julia Vega Pérez; Development Select and Management Corp.; Home Pharmacys, LLC.; Norma Agosto Flores, y; Nicholas Palomba, mediante recurso de apelación presentado el 27 de febrero de 2026, y solicita que revoquemos la *Sentencia* emitida y notificada el 28 de enero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Fajardo, en adelante, TPI. Mediante dicho dictamen, el foro primario desestimó sumariamente y con perjuicio la demanda sobre *Petición de*

---

[1] Mediante Orden Administrativa DJ-2025-063B emitida el 20 de abril de 2026 se enmendó la composición de los paneles.

*Sentencia Declaratoria* de epígrafe e impuso costas a favor de Rio Mar Community Association, Inc. (RMCA)[2].

## I.       **Trasfondo fáctico y procesal**

El 19 de agosto de 2025, la parte apelante presentó una *Petición de Sentencia Declaratoria* contra el Consejo de Titulares de Rio Mar Village (Consejo de Titulares de RMV), la Junta de Directores de Río Mar Village (Junta de Directores de RMV), Coporación ABC y RMCA, en adelante la parte apelada. En síntesis, alegaron ser titulares de varias villas ubicadas en el Condominio Rio Mar Village, sometido al Régimen de Propiedad Horizontal, y que, desde que adquirieron sus respectivas propiedades, las habían arrendado a corto plazo, es decir por términos menores de treinta (30) días. Sostuvieron que, aunque la Escritura Matriz del Condominio, otorgada en el año dos mil dos (2002), prohíbe dichos arrendamientos, la parte apelada nunca hizo valer tal restricción y, por el contrario, permitió dicha práctica por más de veinte (20) años.[3]

Según expusieron, el 1 de marzo de 2023, la Junta de Directores de RMV notificó su intención de hacer cumplir la prohibición contenida en la cláusula octava de la Escritura Matriz, con el propósito de terminar la práctica de los arrendamientos menores de treinta (30) días. Posteriormente, mediante comunicación del 5 de mayo de 2023, la Junta informó que, efectivo el 1 de junio de 2023, las villas solo permitirían arrendamientos por periodos de treinta (30) días o más.[4]

Ante dicha determinación, los apelantes alegaron que varios titulares presentaron una querella ante el Departamento de Asuntos del Consumidor (DACo) el 25 de mayo de 2023.[5] Durante la vista

---

[2] RMCA es una corporación sin fines de lucro organizada y existente al amparo de las leyes del Estado Libre Asociado de Puerto Rico (ELA).
[3] Entrada 1 de SUMAC TPI.
[4] *Íd.*
[5] *Íd.*, anejo A-Parte 1.

administrativa celebrada el 6 de agosto de 2024, las partes informaron que no existía controversia de hechos y que el asunto planteado era estrictamente de derecho, por lo que solicitaron que DACo emitiera una resolución sumaria.

El 21 de febrero de 2025, DACo emitió *Resolución Sumaria,* mediante la cual concluyó que no tenía facultad para enmendar la Escritura Matriz de un condominio ni para dejar sin efecto la disposición que prohíbe los arrendamientos de menos de treinta (30) días. Asimismo, determinó que el documento intitulado *First Amendment to the By-Laws of Rio Mar Village Condominium* no enmendó el Reglamento ni la Escritura Matriz.[6] En consecuencia, mediante *Resolución* emitida el 16 de mayo de 2023, DACo desestimó la querella y ordenó el cierre y archivo del caso.[7]

Así las cosas, mediante la *Petición de Sentencia Declaratoria,* los apelantes solicitaron al foro de primera instancia que declarara extinta la prohibición contenida en la Escritura Matriz por renuncia o abandono de quienes se beneficiaban de ella. Además, pidieron que se ordenara a la parte apelada cesar y desistir de prohibir los arrendamientos a corto plazo y proveer la autorización requerida por la Compañía de Turismo de Puerto Rico para que los titulares pudieran tramitar el registro correspondiente.[8]

Posteriormente, el 30 de septiembre de 2025, el Consejo de Titulares y la Junta de Directores de RMV presentaron su *Réplica a Petición de Sentencia Declaratoria y Solicitud que se declare No Ha Lugar la Petición de Sentencia Declaratoria.* En síntesis, negaron que la prohibición sobre arrendamientos menores de treinta (30) días hubiese quedado extinta o que fuera renunciada por los titulares. Además, alegaron falta de parte indispensable al señalar que los

---

[6] Entrada 1 de SUMAC TPI, Anejo F.
[7] *Íd.,* Anejo H- Parte 6.
[8] Entrada 1 de SUMAC TPI.

restantes titulares del condominio podían verse afectados por cualquier determinación sobre la restricción impugnada.[9]

El 2 de octubre de 2025, los apelantes presentaron *Aviso de Desistimiento Voluntario sin Perjuicio a favor de Río Mar Community Association, Inc.* Explicaron que incluyeron a dicha entidad porque esta cursó una comunicación a los titulares de las comunidades que forman parte de RMCA sobre la prohibición de arrendamientos a corto plazo. No obstante, indicaron que RMV posee su propia Escritura Matriz y que las medidas restrictivas impugnadas fueron implementadas por el Consejo de Titulares y la Junta de Directores de RVM. Por ello, solicitaron que se dictara sentencia sin perjuicio únicamente a favor de RMCA, sin especial imposición de costas ni honorarios.[10] Ese mismo día, el foro de primera instancia declaró *Ha Lugar* el aviso y dictó *Sentencia Parcial* de desistimiento, sin perjuicio, a favor de RMCA, no extensiva a las demás partes y sin especial imposición de costas y gastos ni honorarios de abogado.[11]

Así las cosas, el 20 de octubre de 2025, RMCA presentó *Moción en Solicitud de Reconsideración e Intervención.*[12] Adujo que, en virtud de la Escritura de *Protective Covenants* que grava la propiedad donde se edificó el Condominio Río Mar Village, RMCA y sus miembros eran beneficiarios de condiciones restrictivas que prohibían los arrendamientos a corto plazo. Por ello, sostuvo que era parte indispensable y solicitó al TPI que reconsiderara la *Sentencia Parcial* dictada a su favor, a fin de que se le permitiera continuar en el pleito.[13] En cumplimiento con la Regla 21.4 de Procedimiento Civil, acompañó su solicitud de intervención con una *Moción en Solicitud de Sentencia Sumaria*, mediante la cual planteó que

---

[9] Entrada 14 de SUMAC TPI.
[10] Entrada 17 de SUMAC TPI.
[11] Entrada 18 de SUMAC TPI.
[12] Entrada 19 de SUMAC TPI.
[13] *Íd.*, anejo 3.

procedía desestimar la demanda, con perjuicio, como cuestión de derecho.[14]

Ese mismo día, el foro primario emitió una *Orden* mediante la cual reconsideró y dejó sin efecto la *Sentencia Parcial* dictada el 3 de octubre de 2025. En consecuencia, permitió que RMCA continuara en el pleito y señaló una vista de conferencia inicial para el 15 de diciembre de 2025. Además, apercibió a las partes que debían comparecer preparadas para discutir por qué debía concederse una sentencia declaratoria, a pesar del texto claro de la Escritura Matriz del Condominio RMV.[15]

Posteriormente, el 17 de noviembre de 2025, RMCA presentó una *Moción para que se dé por sometida la Solicitud de Sentencia Sumaria,* en la que indicó que había transcurrido el término dispuesto por la Regla 36.3(b) de Procedimiento Civil sin que los demandantes presentaran oposición. Por tal razón, solicitó que se diera por sometida su solicitud de sentencia sumaria y que el TPI procediera a adjudicarla.[16] Ese mismo día el foro de primario dejó sin efecto la conferencia inicial y dio por sometida la *Moción en Solicitud de Reconsideración e Intervención.*[17]

A raíz de ello, los apelantes presentaron una *Moción de Reconsideración y en Solicitud de Término para Presentar Oposición a Moción Dispositiva,* en esta aclararon que la solicitud de sentencia sumaria de RMCA fue incluida como anejo a la solicitud de intervención y no como una moción dispositiva formal luego de autorizada la intervención. Por tanto, solicitaron que, de entender el TPI que dicho anejo debía considerarse como moción dispositiva, se les concediera un término de veinte (20) días para presentar su

---

[14]Junto a la *Moción en Solicitud de Reconsideración e Intervención.*, RMCA acompañó los siguientes documentos: Escritura Matriz del Condominio Río Mar Village; Escritura de "Protective Covenants"; y la Solicitud de Sentencia Sumaria de la RMCA.

[15] Entrada 20 de SUMAC TPI.

[16] Entrada 23 de SUMAC TPI.

[17] Entrada 24 de SUMAC TPI.

oposición. El TPI les concedió a los apelantes un término perentorio para presentar su oposición a la solicitud de sentencia sumaria.[18]

El 5 de diciembre de 2025, los apelantes presentaron *Oposición a Sentencia Sumaria y Solicitud de Sentencia Sumaria.*[19] En síntesis, rechazaron la solicitud dispositiva de RMCA y aclararon que su teoría no consistía en que el Reglamento de 2004 hubiese enmendado la Escritura Matriz, sino que la restricción sobre arrendamientos menores de treinta (30) días quedó extinta por el paso del tiempo, renuncia o abandono. Además, sostuvieron que, aun si los *Protective Covenants* contenían una restricción similar, esta también quedó extinta por falta de uso y por la conducta de RMCA y del Consejo de Titulares de RMV. Por ello, solicitaron que se denegara la solicitud de sentencia sumaria de RMCA y que se dictara sentencia sumaria a su favor.[20]

Posteriormente, el 22 de diciembre de 2025, RMCA presentó *Réplica a Oposición a Solicitud de Sentencia Sumaria del Demandante.* En esta, reiteró que procedía dictar sentencia sumaria a su favor como cuestión de derecho.[21] Sostuvo que no se configuró

---

[18] Entrada 26 de SUMAC TPI.
[19] Entrada 28 de SUMAC TPI.
[20] En apoyo de su escrito, los demandantes acompañaron los siguientes documentos:

**nejo 1,** Urgente Querella Jurada Solicitando Orden Interdictal Provisional y Permanente y Resolución Declaratoria; **Anejo 2,** Moción Conjunta Sometiendo Hechos Estipulados; **Anejo 3**, Resolución Sumaria emitida por el DACo; **Anejo 4-Parte 1**, Number Two Hundred and Forty Deed Submitting Property to the Horizontal Property Regime Rio Mar Village Condominium; **Anejo 4-Parte 2**, continuación de dicho instrumento, relacionada con las descripciones de los apartamentos; **Anejo 5-Parte 1**, Declaración Jurada de Jorge Rodríguez Melani; **Anejo 5-Parte 2**, continuación de documentación relacionada con la primera hipoteca; **Anejo 5-Parte 3**, correos electrónicos y notificaciones sobre estadías a corto plazo; **Anejo 6-Parte 1**, Declaración Jurada de Julia Griselda Vega Pérez; **Anejo 6-Parte 2**, notificación de mensaje de texto sobre estadía por alquiler a corto plazo; **Anejo 7**, Declaración Jurada de Luis de Jesús Aponte; **Anejo 8,** Declaración Jurada de Manuel Quintín Arroyo Ruiz; **Anejo 9-Parte 1**, Declaración Jurada de Josselyn Jeannette Jiménez Rivera; **Anejo 9-Parte 2**, copia de la escritura de Special Power of Attorney; **Anejos 9-Parte 3** y **9-Parte 4**, continuación de la escritura de Special Power of Attorney; **Anejo 10,** First Amendment to the By-Laws of the Rio Mar Village Condominium; **Anejo 11**, carta de 1 de marzo de 2023 de la Junta de Directores de Río Mar Village; **Anejo 12**, carta de 5 de mayo de 2023 de la Junta de Directores de Río Mar Village; y **Anejo 13**, Declaración Jurada de Tatiana Nicole Ortiz Rivera.
[21] Entrada 31 de SUMAC TPI.

la prescripción, renuncia ni abandono de las condiciones restrictivas. A esos efectos, planteó que la inacción alegada por los apelantes no bastaba para extinguir las restricciones contenidas en la Escritura Matriz, ni en los *Protective Convenants*. También defendió la validez de la cláusula de *non-waiver* contenida en estos últimos. En consecuencia, reiteró su solicitud de que se desestimara la demanda, con perjuicio.[22]

Por su parte, el 15 de enero de 2026, los apelantes presentaron *Dúplica a Réplica a Oposición a Solicitud de Sentencia Sumaria del Demandante.*[23] En esta, reiteraron que la controversia central consistía en determinar si la restricción sobre arrendamientos a corto plazo contenida en la Escritura Matriz y en los *Protective Covenants* quedó extinta por el paso del tiempo, abandono o renuncia. Además, sostuvieron que RMCA no logró controvertir los hechos propuestos por ellos en cuanto a que no impidió ni implementó medidas concretas para prohibir los arrendamientos a corto plazo durante años, y que una sola comunicación cursada en el año 2023 no constituía una acción afirmativa suficiente para interrumpir el término prescriptivo ni para derrotar su teoría de abandono.

Asimismo, los demandantes insistieron en que la Ley de Condominios no regula la extinción de servidumbres en equidad o restricciones voluntarias, por lo que procedía acudir supletoriamente al Código Civil. También argumentaron que la cláusula de *non-waiver* invocada por RMCA resultaba ineficaz ante las actuaciones y omisiones de RMCA y de RMV durante más de veinte (20) años. Por ello, solicitaron nuevamente que se declarara *No Ha Lugar* la solicitud de sentencia sumaria de RMCA y *Ha Lugar* su propia solicitud de sentencia sumaria. En la alternativa,

---

[22] Entrada 31 de SUMAC TPI.
[23] Entrada 38 de SUMAC TPI.

solicitaron que se señalara una vista de sentencia declaratoria al amparo de la Regla 59.1 de Procedimiento Civil.[24]

El 15 de enero de 2026, notificada el 16 de enero de 2026, el TPI emitió *Orden* mediante la cual dio por sometido el asunto.[25] Luego, el 21 de enero de 2026, RMCA presentó *Moción en Cumplimiento de Orden y Reiterando Solicitud de Término para Presentar Oposición a Solicitud de Sentencia Sumaria del Demandante al Amparo de la Regla 36.6 de Procedimiento Civil.*[26] En esta, reiteró que, de no acogerse su solicitud de sentencia sumaria, necesitaba presentar contestación a la demanda y realizar descubrimiento de prueba para poder oponerse a la solicitud de sentencia sumaria de los apelantes. A esos efectos, solicitó un término no menor de veinte (20) días para contestar la demanda y un término no menor de noventa (90) días para realizar descubrimiento de prueba antes de presentar su oposición. Sin embargo, en esa misma fecha, el foro primario emitió la siguiente Orden: "El Tribunal resolverá oportunamente las solicitudes de sentencia sumaria. Luego de ello, de ser necesario, se atenderán los restantes planteamientos."[27]

Así las cosas, el 28 de enero de 2026, el TPI emitió la *Sentencia* apelada, mediante la cual desestimó sumariamente y con perjuicio la demanda sobre *Petición de Sentencia Declaratoria* de epígrafe e impuso costas a favor de RMCA. En adición, el tribunal formuló las siguientes determinaciones de hechos:

1.  Mediante la Escritura doscientos cuarenta (240) de 7 de junio de 2022 (Escritura Núm. 240), otorgada ante la notaria Estela I. Valles Acosta, el Condominio Río Mar Village ("RMV") se sometió al Régimen de Propiedad Horizontal ("Escritura Matriz").

2.  Los demandantes son todos titulares de RMV.

---

[24] *Íd.*
[25] Entrada 39 de SUMAC TPI.
[26] Entrada 40 de SUMAC TPI.
[27] Entrada 41 de SUMAC TPI.

3. Los demandantes están al día en sus respectivas cuotas de mantenimiento con RMV.

4. La solicitud de los querellantes (sic), en síntesis, son (sic):
   a. Que se declare extinta la prohibición contenida en la Escritura Matriz del Condominio Rio Mar Village, sobre los alquileres de menos de 30 días.
   b. Que se ordene proveer a los querellantes los documentos requeridos por la compañía de turismo, para realizar los procesos tendentes a obtener registro, licencia y número de hostelero.

5. La Escritura Matriz establece que los arrendamientos de los apartamentos no podrán ser por términos menores de treinta (30) días.

6. La Escritura Matriz en su sección octava (8) establece lo siguiente:

   > Any lease or rental agreement for any unit must be in writing and must be subject to the requirements of the Condominium documents and the Council Owners, and a copy thereof must be filed with the President or Secretary withing (sic) fifteen (15) days of. (sic) its execution. No unit may be leased or rented for less than thirty (30) days.

7. La parte demandante le solicitó a este Tribunal que declare extinta la disposición de la Escritura Matriz que prohíbe los alquileres de menos de 30 días, fundamentada su razón en que nunca habían hecho cumplir lo dispuesto en la referida escritura.

8. Los demandantes fundamentan sus alegaciones, en cuanto a declarar extinta un inciso de la Escritura Matriz del Condominio, en lo dispuesto en el Código Civil 2020, sobre Servidumbres en Equidad.

9. La Escritura Matriz no se ha enmendado.

10. Como parte de la Escritura Matriz, se encuentra el Reglamento. Dicho Reglamento se entregó a todos los demandantes por parte de la Administración de Condominio.

11. El 15 de diciembre de 2004, el entonces Presidente, Rufilo Vale y Tesorero, Alberto R. Vela de la Junta Directores de RMV, suscribieron un documento intitulado "First Amendment to the By-Laws of the Rio Mar Village Condominium", en el cual se indicó que fue aprobado por el Consejo de Titulares de RMV.

12. El documento que suscribió la Junta de Directores, intitulado "First Amendment to the By-Laws of the Rio Mar Village Condominium", no se reconoció por la parte demandada como el Reglamento, enmienda u otro del RMV, por no constar en los archivos del condominio, documentos que sustenten su legalidad, entiéndase pero

no limitado a, acta donde se presentó en cumplimiento de la Ley de Condominios. No hay constancia de notificación de acuerdos (establecido por ley para 2004), criterio de votación, que cumpla con el requisito en la ley cuando el reglamento pretende enmendar lo dispuesto en la escritura.

13. Dado lo anterior, el referido documento no enmendó el Reglamento del condominio que forma parte de la Escritura Matriz, conforme a lo establecido.

14. La junta de Directores de RMV, mediante carta del 1 de marzo de 2023, notificó su intención de hacer cumplir la prohibición contenida en la Escritura Matriz de RMV con el propósito de "terminar con la práctica de los alquileres menores de treinta (30) días".

15. Mediante carta de 5 de mayo de 2023, la Junta de Directores de RMV informó que, efectivo el 1 de junio de 2023, los apartamentos solo podrán alquilarse por períodos de treinta (30) días o más. Para velar que se cumpla con la prohibición, la Junta de Directores de RMV informó que a partir del 1 de junio de 2023 los contratos de arrendamiento deberán presentarse a la Junta de Directores o a la Administración de RMV para pasar por un proceso de aprobación. Además, informó que, de los arrendatarios "...no contar con un documento que acredite la autorización para entrar al condominio, los oficiales de vigilancia estarán impedidos, por razones de seguridad de permitir el acceso a aquellas personas que no cuenten con la referida autorización, en el caso que nos ocupa, copia del contrato aprobado".

16. Desde que los demandantes son titulares en RMV, algunos hacen más de veinte (20) años, han alquilado sus propiedades a corto plazo, menos de 30 días, en innumerables ocasiones.

17. Siempre que los demandantes alquilan sus villas a corto plazo, lo hacen con el pleno conocimiento y el consentimiento tácito de la Junta de Directores de RMV yo de la Administración.

18. Previo a las comunicaciones del 1 de marzo de 2023 y 5 de mayo de 2023, RMV no había implementado medidas restrictivas concretas para prohibir los arrendamientos menores de treinta (30) días.

19. Las únicas comunicaciones enviadas por RMV previo al 2023, referentes a la prohibición de arrendamientos a corto plazo, fueron en el año 2007. En el 2007, la Administración de RMV envió cinco (5) comunicaciones-cuatro (4) de éstas dirigidas a titulares específicos y una (1) a todos los residentes-haciendo referencia a la prohibición establecida en la Escritura Matriz en cuanto a los alquileres a corto plazo.

20. Los demandantes son personas naturales unos y personas jurídicas, otros.

Inconformes con dicha determinación, los apelantes presentaron este recurso y formularon los siguientes señalamientos de error:

**Primer Error:** [Erró] el TPI al no resolver todas las controversias ante sí y al aplicar de manera incompleta y selectiva el derecho sustantivo, al omitir adjudicar la causal de extinción de las servidumbres por el efecto del tiempo-por el transcurso de veinte (20) años-a pesar de existir una determinación de hecho de que los apelantes han arrendado sus propiedades a corto plazo por más de veinte (20) años con el conocimiento de RMV.

**Segundo Error:** Erró el TPI al fundamentar su sentencia en hechos que no constan como determinaciones de hechos y que mucho menos estén sustentados en el récord.

**Tercer Error:** Erró el TPI al denegar la sentencia sumaria presentada por los apelantes, ya que a tenor con sus propias determinaciones de hechos y los hechos incontrovertidos de conformidad con la Regla 36.3 de las de Procedimiento Civil, procedía dictar sentencia sumaria a favor de los apelantes.

(Mayúsculas y énfasis omitidos).

Por su parte, el 26 de marzo de 2026, RMCA presentó su *Alegato en Oposición*, mediante el cual sostuvo que el TPI actuó correctamente al desestimar la demanda, pues la restricción sobre arrendamientos por términos menores de treinta (30) días surge tanto de la Escritura Matriz como de los *Protective Covenants* que gravan la propiedad donde se edificó el Condominio Río Mar Village. Además, argumentó que los propios hechos propuestos por los apelantes demostraban que no se configuró la extinción de la restricción y que resultaba improcedente utilizar disposiciones del Código Civil para dejar sin efecto una cláusula de la Escritura Matriz sin cumplir con los mecanismos establecidos en la Ley de Condominios.[28]

Luego, el 30 de marzo de 2026, el Consejo de Titulares y la Junta de Directores RMV presentaron su *Alegato en Oposición.* En

---

[28] Entrada 3 de SUMAC TA.

dicho escrito, solicitaron que se confirmara la *Sentencia* apelada. Sostuvieron que la Escritura Matriz constituye la fuente vinculante del régimen de propiedad horizontal; que esta contiene una prohibición expresa e inequívoca contra los arrendamientos por términos menores de treinta (30) días; y que los hechos invocados por los apelantes no eran suficientes para extinguir dicha restricción por abandono, renuncia o por el mero transcurso del tiempo.[29]

Con el beneficio de la comparecencia de las partes, resolvemos.

## II. Exposición de Derecho

### A. Sentencia Sumaria

El mecanismo de sentencia sumaria, regulado por la Regla 36 de Procedimiento Civil[30] permite al tribunal disponer de un caso sin celebrar vista en su fondo.[31]

La Regla 36.1 de Procedimiento Civil[32], establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes.[33] Por tanto, el Tribunal podrá dictar sentencia sumaria si de las alegaciones, deposiciones, contestaciones, interrogatorios y admisiones ofrecidas, junto a las declaraciones juradas, si las hubiere, surge que no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y solo resta por resolver una controversia de estricto derecho.[34]

---

[29] Entrada 4 de SUMAC TA.
[30] 32 LPRA Ap. V, R. 36.
[31] *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Abrams Rivera v. E.L.A.,* 178 DPR 914, 932 (2010); *Nieves Díaz v. González Massas*, 178 DPR 820, 847 (2010); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).
[32] 32 LPRA Ap. V, R. 36.1.
[33] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 335; *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018).
[34] 32 LPRA Ap. V, R. 36.3(e); *León Torres v. Rivera Lebrón,* supra; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, supra, pág. 214; *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137-138 (2006).

En otro extremo, la sentencia sumaria resulta improcedente cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derecho, no proceda.[35]

La parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria.[36] En este sentido, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Dicha parte está obligada a controvertir la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud, ya que, de no hacerlo, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho.[37]

Sin embargo, el hecho de que la otra parte no presente prueba que controvierta la evidencia presentada por la parte promovente de la moción de sentencia sumaria, no implica necesariamente que dicha moción procederá automáticamente si realmente existe una controversia sustancial sobre hechos esenciales y materiales.[38]

Asimismo, toda inferencia que se haga de los hechos incontrovertidos debe hacerse de la manera más favorable a la parte que se opone a la misma.[39] A tono con este principio, el Tribunal Supremo ha indicado que, "[a]l considerar la moción de sentencia sumaria se tendrán como ciertos los hechos no controvertidos que

---

[35] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 335-336; *Mejías et al. v. Carrasquillo et al.,* supra, pág. 299; *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714 (1986).

[36] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 336; *León Torres v. Rivera Lebrón,* supra, pág. 44; *Ramos Pérez v. Univisión,* supra, pág. 215.

[37] *León Torres v. Rivera Lebrón,* supra, pág. 43.

[38] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, pág. 337.

[39] *Mejías et al. v. Carrasquillo et al.,* supra, pág. 300; *Corp. Presiding Bishop CJC of LDS v. Purcell,* supra, pág. 721.

consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente."[40]

En el caso de un foro apelativo, este debe utilizar los mismos criterios que el tribunal sentenciador al determinar si procede dictar sentencia sumaria, sin embargo: (1) sólo puede considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y si el derecho se aplicó de forma correcta.[41]

Así pues, por estar en la misma posición que el foro primario al momento de revisar las solicitudes de sentencia sumaria, el Tribunal Supremo de Puerto Rico estableció un estándar específico, que, como foro apelativo, debemos utilizar. A tales efectos, en *Meléndez González, et al. v. M. Cuebas[42]*, indicó que, de entrada, debemos revisar que tanto la moción de sentencia sumaria, así como su oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil.[43] Subsecuentemente, si existen hechos materiales controvertidos, "el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos".[44] Por el contrario, si encontramos que los hechos materiales del caso son incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente la norma jurídica aplicable a la controversia que tuvo ante sí.[45]

El modelo de sentencia sumaria por insuficiencia de prueba fue adoptado por el Tribunal Supremo en *Medina v. M.S. & D.*

---

[40] *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).
[41] *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 337-338; *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129 (2012).
[42] 193 DPR 100 (2015).
[43] *Íd.*, pág. 118.
[44] *Íd.*, pág. 119.
[45] *Íd.*

*Química P.R., Inc.*[46]. Esta modalidad procede cuando la parte demandante no cuenta con evidencia suficiente para probar su caso.[47] Específicamente, el promovente debe establecer que: (1) el juicio en su fondo es innecesario; (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial a su reclamación; y, (3) como cuestión de derecho, procede la desestimación de la reclamación.[48]

No obstante, para disponer de un pleito por dicho fundamento es indispensable que se le haya brindado a la parte promovida amplia oportunidad para realizar un descubrimiento de prueba y que se demuestre que la prueba descubierta no satisface los elementos necesarios para establecer su causa de acción.[49] Por su lado, la parte promovida no puede evitar tal solicitud "por el mero pretexto de que, a pesar de no contar con evidencia suficiente para probar un elemento indispensable para su reclamación, merece su 'día en corte"[50].

Así que, para derrotar una moción de sentencia sumaria bajo la modalidad de la insuficiencia de la prueba, la parte promovida puede, entre otras cosas, presentar con su oposición una prueba admisible en evidencia o una prueba que pueda convertirse en admisible – aunque de momento no lo sea – o que dé lugar a una prueba admisible que demuestre que existe evidencia para probar los elementos esenciales de su caso; que hay prueba en el récord que puede convertirse en una prueba admisible que derrotaría la contención de insuficiencia del promovente; que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado, o que éste, por su naturaleza, no es un caso

---

[46] 135 DPR 716 (1994).
[47] *Rodríguez Méndez v. Laser Eye*, 195 DPR 769, 786 (2016).
[48] *Íd.*
[49] *Íd.,* pág. 787.
[50] *Íd.*

que conviene que se resuelva por el mecanismo expedito de la sentencia sumaria.[51]

Valga apuntar que, a la modalidad de sentencia sumaria por insuficiencia de la prueba le aplican todos los principios que deben utilizarse por los tribunales al resolver una solicitud de sentencia sumaria.[52] Por ello, podrá dictarse sentencia sumaria solamente cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso[53] y, además, si en derecho procede el reclamo.[54] "[C]uando existe duda sobre si hay o no prueba suficiente o si hay una controversia de hecho, esta duda debe resolverse en favor de la parte promovida"[55].

Así pues, el mecanismo de sentencia sumaria es un remedio discrecional que procederá solo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, que no existen controversias sobre hechos materiales y esenciales, y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria.[56] Hay que señalar que una sentencia sumaria, por constituir una decisión en los méritos es el precedente de cosa juzgada[57] cuando se opone entre partes debidamente relacionadas.[58] Por ello, se ha advertido que, antes de resolver una controversia por la vía sumaria, el juzgador habrá de discernir cuidadosamente al respecto, pues

---

[51] *Medina v. M.S. & D. Química P.R., Inc.,* supra, pág. 734.

[52] *Medina v. M.S. & D. Química P.R., Inc.,* supra, pág. 734.

[53] Un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Íd.*, págs. 213-214.

[54] *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

[55] *Medina v. M.S. & D. Química P.R., Inc.,* supra.

[56] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Véase, además, *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Pérez Vargas v. Office Depot*, 203 DPR 687, 699 (2019).

[57] El efecto de la aplicación de la doctrina de cosa juzgada es que la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que se pudieron haber litigado. *Mun. De San Juan v. Bosque Real, S.E.,* 58 DPR 743, 769 (2003).

[58] *Vera v. Dr. Bravo*, supra, pág. 335.

"mal utilizada, puede prestarse para despojar a un litigante de su 'día en corte', principio elemental del debido proceso de ley"[59].

### B. Ley de Condominios de Puerto Rico

La Ley Núm. 129-2020[60], intitulada *Ley de Condominios de Puerto Rico*, según enmendada, en adelante, Ley de Condominios,[61] se aprobó con el propósito de viabilizar la propiedad individual sobre unidades de apartamentos que forman parte de inmuebles sometidos al régimen de propiedad horizontal.[62] En lo pertinente, su Exposición de Motivos reconoce que los consejos de titulares constituyen la autoridad suprema en cuanto a la administración del inmueble sometido a dicho régimen. No obstante, el Artículo 2 de la Ley de Condominios reconoce que el titular de un apartamento tiene derecho al pleno disfrute de su unidad y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades.[63] A su vez, dicha disposición establece que el ejercicio del dominio en este régimen está limitado por los derechos de los demás titulares y debe ejercerse dentro del marco de la sana convivencia y el respeto al derecho ajeno. Asimismo, dispone que, en el ejercicio y reclamo de sus derechos, los titulares deben actuar conforme a los principios de buena fe, la prohibición de ir contra sus propios actos y la prohibición del abuso del derecho.

La Ley de Condominios constituye el marco jurídico rector de la gobernanza de los inmuebles sujetos al régimen de propiedad horizontal. Dentro de esa jerarquía normativa, le siguen la escritura

---

[59] *González v. Alicea, Dir. Soc. Asist. Legal,* 132 DPR 638, 646-647 (1993).

[60] La Ley Núm. 129-2020 derogó expresamente la Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como la anterior Ley de Condominios, así como cualquier otra ley incompatible con sus disposiciones. Asimismo, dispuso que su vigencia sería inmediata y que aplicaría a todo inmueble sometido al régimen de propiedad horizontal, independientemente de la fecha en que este hubiese sido sometido a dicho régimen. Véanse los Arts. 75 y 76 de la Ley Núm. 129-2020.

[61] 31 LPRA sec. 1921 *et seq.,*

[62] Con. Tit. Centro Int'l Torre II v. PRCI, 210 DPR 403, 414 (2022).

[63] 31 LPRA sec. 1921a.

matriz y el reglamento del condominio correspondiente.[64] Por razón de la primacía del estatuto, cualquier cláusula de la escritura matriz o norma interna que sea claramente incompatible con sus disposiciones carecerá de validez.[65] Cónsono con ello, el Tribunal Supremo ha establecido que las disposiciones de Condominios tienen carácter mandatorio, y no meramente supletorio.[66]

Luego de la Ley, la escritura matriz constituye la principal fuerza vinculante para los condominios.[67] Esta opera como un estatuto privado al cual se adhieren los titulares al adquirir sus respectivos apartamentos sujetos al régimen de propiedad horizontal.[68] Por ello, sus cláusulas sirven de punto de partida para dirimir las controversias que surjan en el Condominio, siempre que no sean contrarias a la ley, la moral y el orden público.[69] En ese sentido, la escritura matriz crea un estado de derecho que debe ser aceptado por los titulares sucesivos al adquirir sus unidades dentro del régimen.[70]

Lo anterior cobra particular importancia porque el propio régimen de propiedad horizontal supone una limitación a las facultades inherentes al uso y disfrute de cada apartamento en beneficio de la colectividad.[71] Por ello, el legislador impuso ciertas limitaciones a la libertad a los propietarios al constituir un inmueble bajo dicho régimen.[72] A tales efectos, la Ley de Condominios exige que la escritura matriz exprese clara y precisamente el destino y uso de toda área comprendida en el inmueble.[73] En específico, requiere

---

[64] *Con. Tit. Centro Int'l Torre II v. PRCI,* 210 DPR 403, 413-414 (2022).

[65] *Con. Tit. Centro Int'l Torre II v. PRCI,* supra, pág. 414.

[66] *Condominio First Federal v. LSREF2,* 202 DPR 934, 940 (2019).

[67] M.J. Godreau, *El condominio: el régimen de propiedad horizontal en Puerto Rico*, 1ra ed., Río Piedras, Ed. Dictum, 1992, pág. 71.

[68] *Consejo Tit. Cond. McKinley Court v. Rullán*, 126 DPR 387, 394 (1990) *Consejo de Titulares v. Vargas*, 101 DPR 579, 582 (1973); *Soto Vázquez v. Vázquez Torres*, 138 DPR 282 (1995).

[69] *Consejo Tit. Cond. McKinley Court v. Rullán*, supra.

[70] *Bravman, González v. Consejo Titulares Real*, 183 DPR 827, 845 (2011).

[71] E. Vázquez Bote, *Derecho Civil de Puerto Rico*, San Juan, Eds. FAS, 1974, T. II, pág. 275.

[72] *Cond. Prof. S.J.H. Centre v. P.R.F., Inc.,* 133 DPR 488, 502 (1993).

[73] Art. 4, *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921c.

que se indique de forma clara el destino dado al inmueble y a cada uno de sus apartamentos, con expresión de las restricciones que tenga tal uso.[74]

De igual forma, nuestro más Alto Foro ha reconocido que el consejo de titulares de un condominio sujeto al Régimen de Propiedad Horizontal está facultado por ley para, mediante reglamento, aclarar el alcance de las cláusulas contenidas en la escritura matriz relacionadas con el uso de los apartamentos que lo componen.[75]

En lo pertinente, el Articulo 40 de la Ley de Condominios regula expresamente los arrendamientos de apartamentos a corto plazo. Dicha disposición establece que:

> Salvo que en la escritura matriz o en el reglamento exista una prohibición expresa o se establezca un término mínimo de arrendamiento, no se podrá prohibir el arrendamiento de apartamentos a corto plazo en inmuebles sometidos al régimen de propiedad horizontal.[76]

### C. Restricciones voluntarias (Servidumbres en Equidad)

Las restricciones voluntarias sobre fincas se encuentran reguladas actualmente en los Artículos 813 al 819 del Código Civil de Puerto Rico de 2020, 31 LPRA secs. 8081-8087. No obstante, previo a la aprobación de dicho Código, esta figura había sido reconocida y desarrollada jurisprudencialmente bajo la doctrina de las servidumbres en equidad, también conocidas como condiciones restrictivas. En términos generales, ambas figuras se refieren a limitaciones de carácter real sobre el uso, construcción, ornato o fines análogos de una finca, impuesta con el propósito de ordenar el desarrollo de una propiedad y preservar determinados intereses comunes.[77]

---

[74] Art. 12, *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1921*k*.
[75] *Morales et al. v. Asoc. Propietarios*, 214 DPR 284, 297 (2024); *Consejo de Titulares v. Chamah Martínez*, 202 DPR 173, 181 (2019).
[76] Art. 40, *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1922*l*.
[77] Art. 813 Cc. 2020, 31 LPRA sec. 8081.

El Código Civil de 2020 dispone que para que estas restricciones sean válidas y eficaces contra todos, deben concurrir los siguientes requisitos: (a) que las limitaciones sean razonables; (b) que formen parte de un plan general de mejoras; (c) que sean compatibles con la política pública sobre uso de terrenos; (d) que consten de forma específica en el título de la propiedad; y (e) que estén inscritas en el Registro de la Propiedad.[78]

Una vez inscritas, estas restricciones adquieren naturaleza real y son oponibles *erga omnes*.[79] Por ello, obligan no solo a quienes originalmente las constituyeron, sino también a los presentes y futuros adquirentes de la propiedad gravada.[80] A esos efectos, el Registro de la Propiedad cumple una función notificadora, pues el conocimiento de las limitaciones inscritas se imputa a todo adquirente posterior.[81] Así, quien adquiere una propiedad sujeta a condiciones restrictivas inscritas queda obligado por ellas, en tanto forma parte del estado jurídico de la propiedad adquirida.[82]

Ahora bien, por tratarse de limitaciones al derecho de propiedad, su alcance debe surgir de un lenguaje claro, específico y libre de ambigüedades.[83] La restricción debe ofrecer un aviso suficiente para que cualquier persona pueda conocer, antes de adquirir la propiedad, qué usos están permitidos y cuáles están prohibidos.[84] Por ello, el principio rector para interpretar estas condiciones es identificar la voluntad real de las partes al momento de establecerlas.[85]

---

[78] Art. 814 Cc. 2020, 31 LPRA. Sec. 8082. Véase, además, *Asoc. V. Villa Caparra v. Iglesia Católica,* 117 DPR 346, 352-353 (1986),

[79] *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 327 (2021); *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 DPR 521, 535 (2002). *Asoc. V. Villa Caparra v. Iglesia Católica,* supra, pág. 353.

[80] *Morales et al. v. Asoc. Propietarios,* 214 DPR 284, 293 (2024); *SLG Fernández-Bernal v. RAD-MAN et al.,* supra, págs. 327-328. *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, pág. 536;

[81] *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, pág. 536.

[82] *SLG Fernández-Bernal v. RAD-MAN et al.,* págs. 328-329.

[83] *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, págs. 538-539.

[84] *Íd.*, pág. 539.

[85] *Residentes Parkville v. Díaz*, 159 DPR 374, 382-383 (2003).

Reconocida la validez y vigencia de una condición restrictiva, los tribunales deben hacer cumplir los propósitos del acuerdo al cual las partes aceptaron someterse al adquirir la propiedad gravada.[86] Ello responde a la naturaleza contractual-real de estas limitaciones y al principio de autonomía de la voluntad. No obstante, su aplicación no puede ser contraria a la ley, la moral o el orden público.[87]

El ordenamiento reconoce, además, remedios para hacer valer estas restricciones. En particular, quien interese impedir o detener la violación de una condición restrictiva puede acudir al mecanismo del *injunction*.[88] Para ello, basta con probar la violación de la servidumbre, sin necesidad de demostrar daños reales o perjuicios sustanciales.[89] Sin embargo, la parte contra quien se solicita el remedio puede oponer defensas de naturaleza equitativa, tales como consentimiento, incuria, conciencia impura, actos propios o cualquier otro impedimento análogo.[90] Asimismo, se puede plantear que la servidumbre se ha extinguido o modificado, siempre que demuestre alguna de las circunstancias o causas reconocidas en nuestro ordenamiento para ello.[91]

El Código Civil de 2020 recoge expresamente las causas por las cuales las restricciones voluntarias o servidumbres en equidad pueden modificarse o extinguirse. En particular, el Artículo 818 del Código Civil dispone lo siguiente:

> Las restricciones voluntarias de la propiedad pueden modificarse o extinguirse:
>
> (a) en la forma y por las causas dispuestas en el acto jurídico que las establece;
> (b) por acuerdo unánime de los interesados, ya sea mediante la eliminación total o parcial de las restricciones o

---

[86] *Residentes Parkville v. Díaz*, supra, pág. 385.
[87] *Íd.*
[88] *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, págs. 537.
[89] *Íd.*
[90] *Rodríguez et al. v. Gómez et al.*, 156 DPR 307, 312-313 (2002).
[91] *Residentes Parkville v. Díaz*, supra, pág. 383.

mediante la constitución de nuevas restricciones que alteran las anteriores;

(c) por efecto del tiempo o por realizarse la condición, si así se constituyeron;

(d) por renuncia o abandono de los propietarios que reciben los beneficios de las restricciones mediante conducta que demuestre una intención de renunciar a ellos o abandonarlos;

(e) por expropiación forzosa, si las restricciones son incompatibles con el uso público de la finca expropiada; y;

(f) por cambios radicales del vecindario.[92]

En cuanto a la causal de **renuncia o abandono**, resulta importante destacar que la mera inacción prolongada no necesariamente extingue una restricción voluntaria o servidumbre en equidad. Conforme a la jurisprudencia, dicha causal exige una conducta que demuestre una intención concluyente de renunciar o abandonar las condiciones restrictivas.[93] Asimismo, ha descrito esta causal como una actitud de dejadez ante el incumplimiento de otros titulares.[94]

El Tribunal Supremo también ha reconocido que la causal de abandono o renuncia está estrechamente vinculada con la causal de cambios radicales del vecindario.[95] Esta última se refiere a cambios que convirtieron la restricción en una carga irrazonable y opresiva para el dueño del predio sirviente; destruyeron el valor que la restricción tenía para los dueños de los predios dominantes; y frustraron completa y permanentemente el propósito que perseguía la servidumbre.[96] Al evaluar este planteamiento, los tribunales deben considerar tanto los cambios ocurridos dentro del área restringida como las alteraciones en los terrenos circundantes, sin que baste demostrar cambios parciales o aislados.[97]

---

[92] Art. 818 del Código Civil de 2020, 31 LPRA sec. 8086.

[93] *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 330 (2021). Véase, M. E. García Cárdenas, *Derecho de Urbanizaciones: servidumbres en equidad, controles de acceso e instalaciones vecinales,* San Juan, Ed. InterJuris, 2010, pág. 55.

[94] *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 330.

[95] *Íd.*

[96] *Íd.,* a la pág. 331*; Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, pág. 542.

[97] *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, págs. 543-544.

En esa misma línea, la jurisprudencia ha establecido que para determinar si los cambios acaecidos tuvieron efecto suficiente sobre la servidumbre en equidad, se evaluarán los siguientes factores: (1) el tamaño del área sujeta a las restricciones; (2) la localización de los cambios ocurridos con respecto el área restringida; (3) el tipo de cambio ocurrido; (4) los cambios en la infraestructura, con particular referencia a los patrones de tránsito; (5) la extensión y naturaleza de los usos comerciales e industriales en las áreas circundantes; (6) el valor de los terrenos residenciales en comparación con los comerciales; (7) el término y duración de las restricciones: (8) si las restricciones continúan siendo beneficiosas o no para los dueños de los solares afectados; y (9) el cambio ocurrido en la zonificación del área y sus alrededores.[98]

A su vez, el Artículo 819 del Código Civil reconoce el mecanismo judicial disponible para hacer valer las causas de modificación o extinción antes mencionadas. En particular, dispone que el propietario o titular de un derecho real sobre una finca gravada puede acudir al tribunal competente para solicitar la modificación o extinción de la restricción voluntaria.[99] Por tanto, mientras una restricción no haya sido válidamente modificada o extinguida conforme a derecho, conserva su eficacia real y resulta exigible contra los titulares presentes y futuros de la propiedad gravada.[100]

**III.    Aplicación del Derecho a los Hechos**

Por la estrecha relación entre el *primer* y el *tercer señalamiento de error*, los discutiremos en conjunto. En esencia, la parte apelante sostiene que el TPI erró al no declarar extinta la restricción que

---

[98] *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 333. Véase, además, *Asoc. Vec. Urb. Huyke v. Bco. Santander*, supra, págs. 543-544; M.J. Godreau y A.I. García Saúl, *Servidumbres y conservación,* 67 (Núm. 2) Rev. Jur. UPR 249, 304-305 (1998).
[99] Art. 819 del Código Civil de 2020, 31 LPRA sec. 8087.
[100] *Íd.*

prohíbe los arrendamientos por términos menores de treinta (30) días y al denegar su solicitud de sentencia sumaria. *No le asiste la razón.*

Del expediente surge que el Condominio RMV fue sometido al régimen de propiedad horizontal mediante la Escritura Núm. 240 de 7 de junio de 2002. Dicha Escritura Matriz describe el inmueble como un complejo residencial privado y establece que sus unidades forman parte de un proyecto residencial. Asimismo, la Escritura Matriz dispone expresamente que **ningún apartamento podrá ser arrendado por un término menor de treinta (30) días**. También surge que la Escritura Matriz no ha sido enmendada. Por tanto, la controversia no gira en torno una prohibición creada posteriormente por la Junta de Directores o por el Consejo de Titulares de RMV, sino a una restricción incorporada al documento constitutivo del régimen de propiedad horizontal.

La Escritura Matriz en controversia, reconoce que el inmueble está sujeto a la Escritura Núm. 2, *Declaration of Protective Convenants*, otorgada el 13 de abril de 1994, e inscrita en el Registro de la Propiedad. Esos *Protective Convenants* no son un documento externo o anejo al régimen, sino una condición restrictiva que grava la finca donde posteriormente se constituyó el Condominio. En armonía con lo anterior, dichos *Protective Convenants* **también establecen que los arrendamientos deben ser por un término no menor de treinta (30) días.**

Así, aún si se aceptara que algunos titulares arrendaron sus unidades por términos menores de treinta (30) días durante determinado período, esta práctica no elimina, por si sola, dos restricciones expresas: la contenida en la Escritura Matriz y la contenida en los *Protective Convenants.* La parte apelante no solicitó ni demostró que ambos instrumentos hubiesen sido válidamente modificados o extinguidos. Tampoco demostró que la restricción se

hubiera tornado incompatible con el destino residencial del proyecto. Por el contrario, la restricción guarda relación directa con la naturaleza residencial del Condominio y con el interés común de preservar el uso ordenado de las unidades.

La parte apelante sostiene que la restricción quedó extinta por renuncia o abandono, debido a que, durante años, algunos titulares arrendaron sus villas a corto plazo con conocimiento o consentimiento de la Junta de Directores o de la Administración. Sin embargo, ese planteamiento no conduce automáticamente a la extinción de la restricción. La tolerancia, inacción alegada no equivale, por sí sola, a una manifestación clara, concluyente e inequívoca de renuncia. Mucho menos cuando los *Protective Convenants* contienen una cláusula expresa de *non-waiver*[101], conforme a la cual la falta de ejecución de una restricción no se entenderá como renuncia al derecho de hacerla cumplir posteriormente.

Del mismo modo, el documento intitulado *First Amendment to the By-Laws of the Rio Mar Village Condominium* no altera este análisis. Si bien, la parte apelante lo invoca como prueba de que el condominio permitió o validó los arrendamientos a corto plazo, el propio documento limita el alcance de cualquier regla o enmienda allí contenida. En particular, dispone que ninguna enmienda o cambio a las reglas y reglamentos podrá entrar en conflicto con las cláusulas o disposiciones de la Escritura Matriz o de los *By-Laws*. Además, reconoce que las modificaciones no serán operativas frente a terceros hasta que consten en escritura pública y sean inscritas. Por tanto, dicho documento no podía tener el efecto jurídico de eliminar una restricción expresa de la Escritura Matriz ni de los *Protective Convenants.*

---

[101] Entrada 19 de SUMAC TA, anejo 2, págs. 52-53.

Más aún, el propio documento de *By-Laws* contiene cláusulas que son incompatibles con la teoría de renuncia o abandono. En particular, establece que la falta de ejecución de algún derecho, disposición, convenio o condición concedida por la Ley de Condominios, la Escritura Matriz o los *By-Laws* no constituirá una renuncia a dicho derecho ni impedirá su ejecución futura. Por ello, lejos de demostrar una intención inequívoca de abandonar la restricción, el documento invocado por la parte apelante preserva la vigencia de los documentos rectores y reserva el derecho de hacer cumplir sus disposiciones.

Tampoco nos persuade el planteamiento de que la restricción quedó extinguida por el mero transcurso del tiempo. La parte apelante descansa en que algunos titulares arrendaron sus propiedades a corto plazo por más de veinte (20) años. No obstante, ese dato, por sí solo, no demuestra que la restricción se haya constituido sujeta a un término, ni que se haya cumplido una condición que produjera su extinción. Además, la práctica de ciertos titulares en contravención de la Escritura Matriz no transforma automáticamente una prohibición expresa, inscrita y vinculante, en una restricción inexistente. Resolver lo contrario permitiría que el incumplimiento reiterado de una cláusula del régimen de propiedad horizontal produjera, sin más, su eliminación.

En ese sentido, los hechos materiales pertinentes no impedían la disposición sumaria del caso. No existía controversia real sobre la existencia de la prohibición en la Escritura Matriz, la falta de enmienda a dicho instrumento, la incorporación de los *Protective Covenants* como gravamen de la propiedad, ni la existencia de una restricción similar en estos.

Por ello, tampoco procedía dictar sentencia sumaria a favor de la parte apelante. Su solicitud descansaba en la premisa de que la práctica de arrendamientos a corto plazo, unida al alegado

conocimiento o consentimiento de la administración, produjo la extinción de la restricción. Sin embargo, esos hechos no satisfacen el estándar requerido para dejar sin efecto una limitación expresa, no enmendada y respaldada por los documentos rectores del régimen. En consecuencia, *el primer y tercer señalamiento de error no fueron cometidos.*

En cuanto al *segundo señalamiento de error*, la parte apelante sostiene que el TPI fundamentó su Sentencia en hechos que no constan como determinaciones de hechos ni están sustentados por el récord. *Tampoco le asiste la razón.*

Al revisar una sentencia sumaria, este Tribunal se encuentra en la misma posición que el foro primario. Por tanto, nos corresponde examinar de *novo* el expediente para determinar si existía alguna controversia real sobre hechos materiales y si el derecho fue aplicado correctamente. Realizado ese ejercicio, concluimos que el dictamen apelado se sostiene.

La Sentencia recurrida descansa en los hechos materiales necesarios para resolver la controversia: la existencia de la Escritura Matriz; la prohibición expresa de arrendamientos menores de treinta (30) días; la ausencia de enmienda a dicho instrumento; la existencia de los *Protective Covenants*; la práctica alegada por los apelantes; y la solicitud de que se declarara extinta la restricción. Tales hechos surgen del expediente y permitían atender la controversia como una de estricto derecho.

Lo determinante en este caso es que el expediente contenía los hechos materiales necesarios para resolver la controversia por la vía sumaria. La prueba presentada por la parte apelante no demostró que la restricción contenida en la Escritura Matriz y en los *Protective Covenants* hubiese sido válidamente modificada o extinguida. Tampoco colocó a este Tribunal en posición de dictar sentencia sumaria a su favor.

Por consiguiente, resolvemos que el TPI no cometió los errores señalados.

### IV. Parte Dispositiva

Por los fundamentos que anteceden, se ***confirma*** la *Sentencia* apelada.

Notifíquese.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones